UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X   Case No.: 7:17-cv-449(CS)

KING ZAK INDUSTRIES, INC.,         :
Plaintiff,         :
         :
         :
- against -         :
         :
         :
PARAMONT GLOBAL LTD.,         :
WEVEEL LLC,         :
NINGBO EVERGREAT IMPORT AND         :
EXPORT CO., LTD., and         :
CHINA EXPORT & CREDIT INSURANCE         :
CORP.  a/k/a SINOSURE,         :
Defendants.         :

-------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT SINOSURE'S MOTION TO DISMISS
## <u>THE AMENDED COMPLAINT</u>

Gregory W. Gilliam
Mazzola Law Firm LLP
733 Third Avenue
New York, NY 10017
(646) 216-8300
Email: greg@mazzolalindstrom.com

November 13, 2018

Defendant China Export & Credit Insurance Corp. a/k/a Sinosure ("Sinosure") respectfully submits this memorandum of law in support of its motion to dismiss all claims against Sinosure for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff King Zak Industries Inc. ("King Zak") brings this lawsuit as an attempt to resolve a dispute over the quality of goods ordered from its supplier.  Goods were ordered; and goods were supplied; but the buyer, King Zak, is not satisfied with the quality of the goods and refuses to pay for some of them.  In an apparent attempt to leverage its position, King Zak also alleges claims against the Sinosure, the commercial credit insurer to King Zak's supplier.  This leverage is misplayed, however, as King Zak has failed to state a recognizable claim against Sinosure primarily because it cannot.  Thus, for the reasons more clearly set forth below, King Zak's claims against Sinosure should be dismissed as a matter of law.

## FACTUAL BACKGROUND

Sinosure does not dispute many the facts as they are alleged in the Amended Complaint, dated October 29, 2018.[1]  King Zak ordered certain good from its suppliers in China over a two-year period. *Id*. at ¶57.  These suppliers delivered the goods to King Zak's location in the United States of America. *Id*. at ¶¶58, 62.  King Zak, however, complained that the quality of some of the goods was insufficient. *Id*. at ¶72.  Consequently, King Zak has refused to pay all of the money owed to its suppliers, which further deepened the nature and scope of the dispute between King Zak its suppliers. *See Gilliam Dec.*, Exh. 1.  Sinosure, as it does from time to time, attempted to collect the unpaid balance owed to its insured using collection council located in Illinois. *Id*.  King

---

[1] Amended Complaint, Oct. 29, 2018, Docket No. 64 (hereinafter "*Am. Cmpl.*").

Zak did not dispute the non-payment, but rather tried to justify it with "voluminous documents". *Gilliam Dec.*, Exh. 2

In its Amended Complaint, King Zak offers no new allegations that would fairly put Sinosure on notice of the tortious conduct that it is expected to defend itself. The undisputed facts in this regard offer some clarity in otherwise muddled quality-of-goods dispute. Here, it is undisputed that King Zak has an outstanding amount owed to Sinosure's insured. *Gilliam Dec.*, Exhs. 1, 2. While King Zak may claim an affirmative defense in the form of "voluminous documentation", the unpaid amount nevertheless remains a fact. It is also undisputed that Sinosure used collection counsel in Illinois to collect the King Zak debt. *Id.* Finally, it is undisputed that King Zak decided to not pay the outstanding amount of over $300,000, even after it had already paid over $2,000,000 to its Chinese vendors. *Id.*, see also Am. Cmpl., ¶58.

Whether or not the supplied goods were defective is a separate question not addressed in this motion. Indeed, Plaintiff's claims against Sinosure arise directly from Sinosure's attempt to collect a commercial debt and has nothing to do with allegedly defective bowls and plates. And, for the reasons detailed below, King Zak's claims against Sinosure fail as a matter of a law.

**ARGUMENT**

**A. Legal Standard**

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true the well-pleaded factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). In so doing, the Court need not give "credence to plaintiff's conclusory allegations" or legal conclusions offered as pleadings. *Cantor Fitzgerald v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002) (internal quotation marks omitted). Indeed, the court should begin by "identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. 679.  If well-pleaded factual allegations exist, the court must then determine whether they plausibly give rise to an entitlement for relief. *Id.*   A plaintiff need only plead "a short and plain statement of the claim that will give the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)(internal quotations omitted, emphasis added.)

Here, Plaintiff has alleged two causes of action against Sinosure: "Tortious Interference with Prospective Business Relations" (Plaintiff's fifth listed cause of action) and "Declaratory Judgement" (sixth listed cause of action).

In order to successfully plead a claim for tortious interference with prospective business relations, fair notice requires a plaintiff to sufficiently allege (1) a business relationship between the plaintiff and a third party; (2) defendant's knowledge of that relationship and intentional interference with it; (3) defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair or improper means; and (4) injury to the relationship.  *Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428, 433 (S.D.N.Y. 2003) (*citing Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 108-09 (2d Cir. 1997))

King Zak's claim for tortious interference with prospective business relations against Sinosure fails as a matter of law as the Amended Complaint does not allege intentional interference on the part of Sinosure, does not allege that Sinosure acted with the sole purpose of harming the plaintiff; nor does it allege that Sinosure used "dishonest, unfair or improper means" in its dealings with third parties.

**B.  King Zak's Fifth Cause of Action Should Be Dismissed As It Is Insufficiently Pled**

   *1) Plaintiff does not allege Sinosure's intentional interference with 3rd Parties.*

   Plaintiff's fifth cause of action fails as a matter of law as it has not pled any intentional interference on part the Sinosure with Plaintiff's third-party vendors in China.   As Judge Sheindlin noted, "What makes interference tortious is that the defendant acted with the *intent to interfere.*" *Hutton*, 275 F. Supp. 2d at 435 (emphasis added).   *Hutton* is illustrative if only for the reason that the court held that a plaintiff must allege specific 3rd parties with whom the defendant intentionally interfered in order to sustain a cause of action for tortious interference with prospective business relations.

   Briefly, *Hutton* involved a prospective buyer of Colorado goods who intended to resale the same goods to prospective 3rd party buyers in New York.   When the seller of the goods, however, refused to accept a check as payment as they previously indicated they would, the buyer claimed that seller tortious interfered with prospective business relations, *e.g.* the 3rd party buyers in New York.   In dismissing the claim, Judge Sheindlin held, *inter alia*, that the claim failed as a matter of law as the buyer failed to allege that the defendant specifically knew of any of the prospective 3rd party buyers.   Without such specific knowledge, there were no grounds for intentional interference and, therefore, no claim.

   Similarly, King Zak makes no allegations of intentional interference with known 3rd parties in the Amended Complaint.   King Zak cites two Chinese entities Shangai Ashburn Aluminum Foil Products Co. Ltd., and Ningbo Homelink Eco-iTech Co. Ltd., as companies that refused to do business or altered the terms of their business with King Zak allegedly as a result of Sinosure's reporting of King Zak's unpaid debt.   *Am. Cmpl.* at ¶¶ 111-113.   Yet King Zak does not allege that Sinosure knew of these relationships before the attempted debt collection, nor do they

4

allege that Sinosure acted to intentionally interfere with these specific relationships.   These references are anecdotal and do not evince or even allege the requisite targeted intent on the part of Sinosure.  Just like the prospective 3rd party buyers in *Hutton*, Sinosure has no way of knowing that these prospective relationships even existed.   Thus, King Zak cannot sufficiently allege tortious interference with prospective business relations because King Zak has not alleged the specific requisite intent.

>   *2) Plaintiff does not allege that Sinosure acted with the sole purpose of harming the Plaintiff.*

King Zak does not allege that any action taken by Sinosure was undertaken for the sole purpose of harming plaintiff.   Each and every allegation asserted by King Zak against Sinosure merely describes the standard business practices associated with a credit insurer collecting a debt. By definition, export credit insurance protects an exporter of products and services against the risk of non-payment by a foreign buyer.[2]  By alleging that Sinosure "downgraded King Zak's credit rating" as a result of unpaid debt, King Zak is essentially alleging that Sinosure acted like an export credit insurer. (*See Am. Cmpl.*, ¶ 108.)  While commercially inconvenient to King Zak, each of the alleged acts has a justified business purpose for an export credit insurer.  *See, e.g., Vinas v. Chubb Corp.,* 499 F. Supp. 2d 427, 434 (S.D.N.Y. 2006); *A&A Jewellers Ltd. v. Bogarz, Inc.,* 2005 U.S. Dist. LEXIS 33873, at *5 (W.D.N.Y. 2005) ("Actions taken, at least in part, to promote or advance [defendant's] economic self-interest are, by definition, not taken for the sole purpose of harming [plaintiff].")  Accordingly, King Zak has insufficiently pled a claim for tortious interference with prospective business relations.

---

[2] See https://www.export.gov/article?id=Trade-Finance-Guide-Chapter-9-Export-Credit-Insurance, last visited November 13, 2018.

*3) Plaintiff does not allege that Sinosure used dishonest, unfair or improper means in its dealings with third parties.*

A closer look at Plaintiff's Amended Complaint is telling with respect to where Plaintiff believes the improper conduct, if any, occurred. In paragraph 97 of the Amended Complaint, King Zak alleges that "…Paramont and/or its affiliates resorted to filing false, defamatory, and libelous claims with its insurance carrier, Sinosure…" *Am. Cmpl*. ¶97. Similarly, in paragraph 151, King Zak alleges "Paramont/Evergreat/WeVeel have intentionally interfered with King Zak's relationships with other Chinese manufacturers by submitting false and fraudulent claim with Sinosure, alleging that King Zak does not pay its invoices." *Am. Cmpl*. ¶151. Nowhere in the Amended Complaint does King Zak allege tortious or wrongful means on the part of Sinosure directed to third parties.

"As federal courts applying New York law have recognized, conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192, 785 N.Y.S.2d 359, 363-64, 818 N.E.2d 1100, 1104-05 (2004)(*citing G.K.A. Beverage Corp. v Honickman*, 55 F.3d 762, 768 [2d Cir 1995] [claim dismissed because alleged conduct was not directed at plaintiff's customers]; *Fonar Corp. v Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 482 [SD NY 1997] ["(U)nder New York law, in order for a party to make out a claim for tortious interference with prospective economic advantage, the defendant must . . . direct some activities towards the third party . . ."]; *Piccoli A/S v Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 167-168 [SDNY 1998] [claim must fail because "defendants' alleged conduct concededly was not directed towards any third party with whom Piccoli had an existing or prospective business relationship"].)

King Zak's Amended Complaint is simply empty of any allegations of wrongdoing or improper means with respect to third parties.  Indeed, by its own pleading, King Zak seems to be alleging that improper or tortious conduct on the part of co-defendants and not Sinosure. Moreover, even drawing every favorable inference to Plaintiff's benefit, the Amended Complaint contains no allegations any wrongdoing, tortious conduct, or improper influence directed to any third parties.  Accordingly, King Zak has insufficiently pled a claim for tortious interference with prospective business relations.

**C.      This Court Should Dismiss Plaintiff's Claim for Declaratory Judgment**

The Second Circuit has provided two factors to help district courts properly exercise the broad discretion conferred by the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (the "DJA"),: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, 2011 U.S. Dist. LEXIS 127635, at *13-14 (S.D.N.Y. Nov. 2, 2011)  Other factors include: (1) whether the proposed remedy is being used merely for procedural fencing, (2) whether there is a better or more effective remedy, (3) whether there are other proceedings pending, and (4) whether the declaratory judgment action anticipates defenses, *Id*.

Here, declaratory relief is simply inappropriate as there is already better and more effective remedy available to the proper parties to the instant controversy.  To wit, in a matter involving a dispute as the performance and sufficiency of goods ordered, declaratory relief such as sought by King Zak would not resolve the underlying controversy, which is already pending before this Court.

King Zak seeks declaratory relief that "(i) it owes no monies under the disputed invoices, (ii) Sinosure must remove the claim from King Zak's credit analysis, and (iii) Sinosure shall not interfere with the export of goods from China to King Zak as a result of the Paramount dispute." *Am. Cmpl.* ¶169.

The underlying dispute is joined and undeniably rests between defendants Paramont Global Ltd., Weveel LLC, Ningbo Evergreat Import and Export Co., Ltd., and Plaintiff King Zak. Specifically, the order, manufacture, and delivery of the goods in questions has occurred in the past and the best forum for resolution of the underlying issues lies with the already pending case. Declaratory relief of the nature sought will serve no purpose in clarifying or settling the legal relations in issue.

## CONCLUSION

For the foregoing reasons, Plaintiff King Zak's fifth cause of action should be dismissed pursuant to Fed R. Civ. P. 12(b)(6) for failure to state to a claim and this Court should exercise its discretion and dismiss Plaintiff sixth cause of action for declaratory relief.

Dated: Westchester, New York
      November 13, 2019

                                       Respectfully submitted,

                                       **Mazzola Law Firm LLP**

                                       s/*Gregory W. Gilliam*
                                       Gregory W. Gilliam
                                       Mazzola Law Firm LLP
                                       733 Third Avenue
                                       New York, NY 10017
                                       (646) 216-8300
                                       Email: greg@mazzolalindstrom.com