UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X  Case No.: 7:17-cv-449(CS)
KING ZAK INDUSTRIES, INC.,                   :
Plaintiff,                                                  :
                                                            :
                                                            :
                                                            :
- against -                                                 :
                                                            :
                                                            :
PARAMONT GLOBAL LTD.,                        :
WEVEEL LLC,                                                 :
NINGBO EVERGREAT IMPORT AND                  :
EXPORT CO., LTD., and                                       :
CHINA EXPORT & CREDIT INSURANCE              :
CORP. a/k/a SINOSURE,                                       :
Defendants.                                                 :
------------------------------------------------------------ X

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT SINOSURE'S MOTION TO DISMISS
# THE AMENDED COMPLAINT

Gregory W. Gilliam
Mazzola Law Firm LLP
733 Third Avenue
New York, NY 10017
(646) 216-8300
Email: greg@mazzolalindstrom.com

December 17, 2018

Defendant, China Export & Credit Insurance Corp. ("Sinosure"), by and through its undersigned counsel, submits the following as its reply to Plaintiff King Zak's opposition to Sinosure's Motion to Dismiss pursuant to Fed R. Civ P. 12(b)(6).

Plaintiff's Amended Complaint should be dismissed pursuant to Fed. R. Civ. Proc. 12(b)(6) because it has failed to state a claim for which relief can be granted. The developed case law surrounding the basic pleading requirements for complaints such as Plaintiff's is relatively clear in its fundamental requirement that a defendant must be put on a "fair notice" of the basic grievance underlying the dispute. Here, even when the allegations are viewed in a light most favorable to the non-movant, Plaintiff cannot meet its fundamental requirement: providing Sinosure fair notice of the any legally cognizable grievance. Accordingly, the claim of tortious interference with prospective business relations should be dismissed and this Court should, in its discretion, dismiss the claim for declaratory relief of Plaintiff King Zak Industries Inc. ("King Zak")

## Summary of Allegations

The allegations, assumed to be true for the sake of this motion, are straightforward. King Zak ordered goods from a Chinese manufacturer. Amended Complaint at ¶57. The Chinese manufacturer assembled the raw materials, the necessary labor and equipment, then manufactured and delivered the goods. For its part, Sinosure acted as the export-credit insurer for the Chinese manufacturer. *Id*. at ¶98. Upon delivery, King Zak believed that some of the delivered goods were defective and, consequently, refused to fully pay the Chinese manufacturer. Gilliam Dec., Exh's 1 and 2.

As is its right, the Chinese manufacturer turned to Sinosure to help collect the outstanding debt, which at this point was USD$314,761.13. Gilliam Dec., Exh. 2. Sinosure used its US

1

collection counsel to help collect the debt. Amended Complaint. at ¶99.  Rather than pay, King Zak felt - and seemingly still feels - that it was justified in its refusal to fully pay for the ordered goods.  Indeed, as an excuse for not fully paying, King Zak dumped 300+ "families of documents" on collection counsel as proof that it was justified in its refusal to pay. Gilliam Decl., Exh. 2.

Collection counsel informed King Zak of the consequences of its actions if it continued with its decision to not pay the outstanding invoices. *Id*. at Exh's 1 and 2.  Failure to fully pay, for whatever reason, would likely increase the future commercial risk associated with processing orders from a US buyer. *Id*.  This consequence is especially acute when, as here, King Zak is dealing with a central commercial export credit insurer.  Regardless, King Zak decided that the US legal system was its preferred venue to vindicate its refusal to pay and, on January 20, 2017, it filed suit alleging, *inter alia*, that Sinosure tortiously interfered with King Zak's prospective business relations.

Notably, however, King Zak had no evidence of any harm to them at the time of the initial suit.  Indeed, only in its Amended Complaint, filed on Oct. 29, 2018, does King Zak point to two separate Chinese manufacturers who allegedly altered the terms of business dealings with King Zak *after* King Zak initiated litigation. Amended Complaint at ¶¶111-113.

## ARGUMENT

Taken as a whole, King Zak's grievance with Sinosure is that Sinosure acted as an export credit insurer.  When its insured was not fully paid, Sinosure attempted to collect the missing payments on behalf of its insured.  Its insured had already invested resources in the manufacturing of goods intended for export.  Once these goods were delivered, payment was not fully made.  In attempting to collect the relatively minor outstanding amount, Sinosure's collection counsel made the obvious clear to King Zak: failure to pay – for whatever reason – would likely affect King

2

Zak's credit-risk profile going forward. King Zak decided that its refusal to pay was justified and it decided to not pay. This fact is undisputed.

Nevertheless, King Zak asserts that by "black-listing" them in China (a necessarily passive act), Sinosure has somehow targeted them for the sole purpose of doing harm to King Zak. The truth, however, is that Sinosure acted as it should. If the allegations in the Amended Complaint are taken as true, once King Zak decided to refuse to fully pay, Sinosure shared that decision with its other insureds – which is admittedly significant given Sinosure's alleged role in the Chinese export industry. This action is what export credit insurers do. Such action, however, does not rise to the level of tortious interference with prospective business relations.

### A. King Zak has failed to plead a claim for Tortious Interference with Prospective Business Relations.

To state a claim for tortious interference with prospective business relations, plaintiff must allege that: (1) there was a business relationship with a third party; (2) defendant knew of that relationship and intentionally interfered with it; (3) defendant either acted solely out of malice or used wrongful means; and (4) defendant's interference caused injury to the relationship with the third party. *See e.g.*, *Vinas v. Chubb Corp.*, 499 F. Supp. 2d 427, 434 (SDNY 2006).

Sinosure asserts in moving papers that Plaintiff's claim is insufficiently pled for two reasons. First, Plaintiff fails to sufficiently allege that Sinosure acted with the requisite *intent to interfere* with King Zak's business relationship with its prospective Chinese manufacturers. Second, the allegations fail to sufficiently describe a tort (e.g. a wrongful act undertaken for the sole purpose of harming the plaintiff). *See, generally*, Sinosure Moving Papers, pp 3-6.

For its opposition, Plaintiff simply reiterates the same allegations from the Amended Complaint and deems them sufficient. King Zak identifies two Chinese manufacturers that purport to either altering their business terms with King Zak or refusing to do business with King Zak. In

3

the eyes King Zak, these occurrences manifest a sinister attempt by Sinosure to somehow punish King Zak. Moreover, King Zak asserts that the interference comes in the specific form of "misrepresentations" made by Sinosure to potential Chinese manufacturers. Both of the responses are fundamentally flawed.

　　*1. King Zak Has Not Alleged Specific Acts Directed to Specific 3rd Parties.*

Plaintiff's conclusory assertion that Sinosure "was aware" of the identity of King Zak's other Chinese manufacturers is insufficient to support its claim of tortious interference. Nowhere in the Amended Complaint does King Zak allege that Sinosure was aware of the existence of a business relationship, prospective or otherwise, between Shanghai Aluminum Foil Products Co., Ltd. ("Shanghai Aluminum") and King Zak. Similarly, there are no allegations that Sinosure was aware of a business relationship, prospective or otherwise, between King Zak and Ningbo Homelink Eco-iTech Co., Ltd. ("Ningbo Homelink").

For its part, King Zak identifies Shanghi Aluminum and Ningbo Homelink as if Sinosure is expected to know either who they are or that they were even in a business relationship with King Zak. As of 2017, Sinosure had 110,000 customers.[1] It is simply a stretch to assume that because King Zak does business in China that Sinosure is aware of each King Zak commercial relationship. Without the requisite knowledge of prospective business relations, or the even the allegation of such knowledge, King Zak cannot maintain a claim for tortious interference with prospective business relations.

---

[1] Sinosure 2017 Annual Report available at
http://www.sinosure.com.cn/en/Sinosure/Profile/index.shtml , last visited on Dec. 16, 2018. "As of the end of 2017, the cumulative domestic and foreign trade and investment supported by Sinosure exceeded USD 3.3 trillion; the accumulated number of customers served was 110,000; and claims paid had amounted to USD 10.8 billion."

New York Case law is well settled that the defendant must be aware of the business relationship with a 3rd party and *intentionally interfere* with it. *See e.g.*, *Vinas, infra.* at 499 F. Supp. 2d 427 (SDNY 2006); *see also Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428, 433 (SDNY 2003). Here, King Zak asserts the fallacy that because King Zak is aware of the business relationship, Sinosure must somehow be aware of it as well.

*2. King Zak Has Not Alleged A Tort.*

Setting aside the spin, there is nothing in the Amended Complaint that amounts to an allegation of a tort (e.g. a culpable act made solely out of malice or the use of wrongful means). *See Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190, 785 N.Y.S.2d 359, 362, (2004) (Holding that where a suit is based on interference with a non-binding relationship, the plaintiff must show that defendant's conduct was more culpable. The defendant's conduct must amount to a crime or an independent tort. Conduct that is not criminal or tortious will generally be lawful and thus insufficiently culpable to create liability for interference with prospective contracts or other non-binding economic relations.)(internal quotations omitted).

King Zak attempts to point to "misrepresentations" as wrongful, but even when viewed in a light most favorable to Plaintiff, such allegations are revealed to be completely conclusory and self-serving since there is no misrepresentation.

It is self-evident that Sinosure has an obligation to its insureds. Indeed, once King Zak refused to fully pay proffered invoices, Sinosure was <u>obliged</u> to note as much for the sake of all of its insureds. King Zak now represented a *de facto* increased risk insofar as export credit insurance is concerned. Collection counsel made this point clear in its communications to King Zak prior King Zak's decision to initiate litigation.

Again, King Zak makes the mistake of imputing its perception to that of Sinosure. Whereas King Zak feels it was justified in its refusal to fully pay the proffered invoices, Sinosure as the

export credit insurer, was only concerned with the fact of non-payment. Put another way, Sinosure could not have made the alleged misrepresentations at the root of King Zak's tortious interference claim because there were no misrepresentations: King Zak did not fully pay the proffered invoices. This fact is undisputed. *See* Amended Complaint, ¶¶102, 106, and 107.

Moreover, King Zak's assertion that Sinosure acted to solely harm King Zak fails as a matter of law. As argued in the moving papers, New York courts have held that "actions taken, at least in part, to promote or advance [defendant's] economic self-interest are, by definition, not taken for the sole purpose of harming [plaintiff].") *A&A Jewellers Ltd. v. Bogarz, Inc.,* 2005 U.S. Dist. LEXIS 33873, at *5 (W.D.N.Y. 2005). Adjusting the credit risk of a non-paying US purchaser, is completely within the economic self-interest of Sinosure.

Accordingly, Plaintiff's claim for tortious interference with prospective business relations fails as matter of law and should be dismissed in accordance with Fed. R. Civ. P. 12(b)(6).

### B. This Court Should Deny King Zak's Claim for Declaratory Relief.

This Court should deny King Zak's request for declaratory relief as there is no justiciable controversy pending between King Zak and Sinosure that is ripe for declaratory judgement. The Declaratory Judgment Act, 28 U.S.C. § 2201(a) (the "DJA") is not intended to be used by parties who seek a declaration of non-liability to preemptively defeat tort claims already accrued by past wrongful conduct. *Nat'l Union Fire Ins. Co. v. Int'l Wire Grp., Inc.*, 2003 U.S. Dist. LEXIS 9193 at 15 (S.D.N.Y. June 2, 2003). ("The reason for this rule is clear: declaratory relief is intended to operate prospectively. There is no basis for declaratory relief where only past acts are involved.") *See also, John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, No. 11-CV-5453-CM, 2011 U.S. Dist. LEXIS 127635, at *10-11 (S.D.N.Y. Nov. 2, 2011)

Moreover, courts in the Second Circuit have repeatedly refused to exercise jurisdiction over declaratory actions motivated by a desire to wrest the choice of forum from the real plaintiff. *Int'l Wire Grp., Inc.*, 2003 U.S. Dist. LEXIS 9193, at *18-19

Here, it is clear that King Zak is attempting the Court's discretion within the DJA to adjudicate past acts. King Zak seeks declaratory relief that "(i) it owes no monies under the disputed invoices, (ii) Sinosure must remove the claim from King Zak's credit analysis, and (iii) Sinosure shall not interfere with the export of goods from China to King Zak as a result of the Paramount dispute." Amended Complaint ¶169. All of these requests for relief necessarily depend on a resolution of the underlying issue of whether or not king Zak's non-payment was justified. The already pending action is the best way to fully adjudicate that relief.

Further, King Zak's claim for declaratory relief is a transparent race to the courthouse. As the exhibits to the moving papers make clear, on January 19, 2017, collection counsel in Chicago sought "direct dispute documentation" by January 23, 2017. Absent a response, collection counsel indicated that the matter would be reserved to "local counsel for suit." Gilliam Dec., Exh. 2.

Rather than supply the direct dispute documentation, King Zak raced to the courthouse of its choosing and filed suit on January 20, 2017, thereby denying Sinosure its preferred forum.

Accordingly, Plaintiff's claim for declaratory should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff King Zak's fifth cause of action should be dismissed pursuant to Fed R. Civ. P. 12(b)(6) for failure to state to a claim and this Court should exercise its discretion and dismiss Plaintiff sixth cause of action for declaratory relief.

Dated: Westchester, New York
      December 17, 2018

Respectfully submitted,

**Mazzola Law Firm LLP**

      s/*Gregory W. Gilliam*
Gregory W. Gilliam
Mazzola Law Firm LLP
733 Third Avenue
New York, NY 10017
(646) 216-8300
Email: greg@mazzolalindstrom.com